2017 PA Super 242

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KERRY CHARLES SMITH, | : | |
| | : | |
| Appellant | : | No. 1397 WDA 2016 |

Appeal from the PCRA Order August 31, 2016
In the Court of Common Pleas of Bedford County
Criminal Division at No.: CP-05-CR-0000303-2011

BEFORE: PANELLA, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

OPINION BY DUBOW, J.:                                          **FILED JULY 24, 2017**

Appellant, Kerry Charles Smith, appeals from the August 31, 2016
Order entered in the Bedford County Court of Common Pleas dismissing his
first Petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.
§§ 9541-9546. He challenges the effectiveness of trial counsel's assistance.
After careful review, we affirm.

The Commonwealth charged Appellant with Rape of Child, Involuntary
Deviate Sexual Intercourse with a Child, Aggravated Indecent Assault on a
Child, Indecent Assault on a Child, Indecent Exposure, Corruption of Minors,
and Attempted Indecent Assault on a Child[1] related to Appellant's sexual
abuse of two young girls[2] while babysitting for their family.

_____

[1] 18 Pa.C.S. §§ 3121(c) (5 counts), 3123(b) (5 counts), 3125(a)(7) (10
counts), 3126(a)(7) (15 counts), 3127(a) (31 counts), 6301(a) (1 count),
and 901(a) (2 counts), respectively.
*(Footnote Continued Next Page)*

On direct appeal, this Court adopted the trial court's statement of facts as follows:

> The charges arose when Ch.J., an eleven-year-old girl, told her family that Appellant had attempted to kiss her and touched her chest. Upon hearing this complaint, Ch.J.'s older sister, Ca.J., came forward with allegations that she too had been assaulted by Appellant numerous times when she was seven [to ten years old], several years before. During their investigation, the Pennsylvania State Police conducted a consensual intercepted phone call between Appellant and Ca.J., in which Appellant made several incriminating statements.
>
> *    *    *
>
> Ca.J. testified that Appellant babysat her from the time she was seven years of age to ten years of age. Ca.J. narrowed the babysitting periods to times when both of her parents were working for the night or her father would go out on a fire call. She testified that Appellant would make her watch pornographic movies with him while she sat on Appellant's lap. Appellant then progressed to ma[s]turbating in front of the child, and then had Ca.J. masturbate him. Appellant ejaculated in both scenarios. Ca.J. testified that Appellant had her masturbate him over thirty times. Ca.J. testified that the masturbation incidents occurred near radio towers close to Appellant's home, inside Appellant's home, and on motorcycle trips with Appellant. Ca.J. also testified that Appellant digitally penetrated her genitals … over ten times. Ca.J. testified that these incidents occurred in her parents' bedroom, on her couch, at Appellant's home, and sometimes her bedroom. As she got closer to ten years of age, Appellant had Ca.J. perform oral sex on him and Appellant would sometimes ejaculate in her mouth. Ca.J. testified that the incidents of oral sex occurred in her bedroom while Appellant sat at her desk, and happened at least five times.

*(Footnote Continued)* ───────────

---

[2] Due to the age of the victims and the nature of the offenses, we will refer to the victims only by their initials: Ch.J., and her older sister Ca.J.

* * *

Ch.J., who was eleven years of age at the time of trial, testified that she visited Appellant during the summer of 2011. Appellant took her to an antenna tower on a nearby mountain and attempted to kiss her in what she described as a "boyfriend" or "girlfriend" kiss. Ch.J. also testified that when she was seven-years-old, Appellant came to her home and attempted to touch her chest.

* * *

Ch.J. testified that while Appellant was working on computers at her home he tried to make her watch "strange videos" with "boys and girls." She described the videos as "disgusting" and "inappropriate."

**Commonwealth v. Smith**, No. 410 WDA 2013, unpublished memorandum at 2-3 (Pa. Super. filed Sept. 12, 2014) (footnote omitted).

Ch.J. provided a statement describing Appellant's abuse to a Pennsylvania State Trooper in the presence of her grandmother and her sister Ca.J. Appellant's counsel did not file any pre-trial motions challenging the victims' competency or alleging taint of Ch.J.'s testimony.

Appellant personally found and hired a forensic engineer expert, Dennis Walsh, before trial counsel Thomas A. Crawford Jr., Esquire, entered his appearance, in order to challenge the authenticity of the recording. Counsel reviewed Walsh's resume and spoke with him numerous times before trial. "At trial, Walsh admitted to lying under oath in a previous court proceeding, falsifying his resume, and being diagnosed with a paranoia disorder[,] which led Walsh to believe balloons were 'speaking to him' on

one occasion." PCRA Court Opinion, 8/31/16, at 2. The trial court provided a special cautionary jury instruction regarding Walsh's expert testimony.

On July 30, 2012, a jury convicted Appellant of Rape of Child and numerous other sexual offenses. On November 8, 2012, the trial court imposed an aggregate term of 80 to 195 years' incarceration.

Appellant filed a timely Post-Sentence Motion, which the trial court denied on November 20, 2012. After the reinstatement of his appeal rights *nunc pro tunc*, Appellant filed a timely Notice of Appeal on March 4, 2013.[3] This Court affirmed the Judgment of Sentence on September 12, 2014. ***Commonwealth v. Smith***, *supra*. Our Supreme Court denied allowance of appeal on March 24, 2015. ***Commonwealth v. Smith***, 112 A.3d 652 (Pa. 2015). Appellant did not seek review by the U.S. Supreme Court. Appellant's Judgment of Sentence, therefore, became final on June 22, 2015. ***See*** 42 Pa.C.S. § 9545(b)(3); U.S. Sup. Ct. R. 13.

On January 11, 2016, Appellant filed the instant timely *pro se* PCRA Petition, his first, later amended by appointed counsel, alleging ineffective assistance of trial counsel. The PCRA court held an evidentiary hearing on May 20, 2016, at which Appellant testified and presented testimony from his

_____

[3] On February 20, 2013, the PCRA court reinstated Appellant's appellate rights *nunc pro tunc* pursuant to a PCRA Petition alleging ineffective assistance of counsel for failing to file a requested appeal.

trial counsel Thomas A. Crawford Jr., Esquire, and Lesley R. Childers-Potts, Esquire.

On August 31, 2016, the PCRA court dismissed Appellant's Petition in a Memorandum Opinion and Order. On September 20, 2016, Appellant filed a Notice of Appeal. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I. Whether the PCRA court erred in finding that trial counsel, Thomas Crawford, was not ineffective for failing to properly address and challenge the competency of Ch.J.

II. Whether the PCRA court erred in finding that trial counsel, Thomas Crawford, was not ineffective for failing to file a "taint" motion.

III. Whether the PCRA court erred in finding that trial counsel, Thomas Crawford, was not ineffective regarding vetting and calling "expert" Dennis Walsh to testify on the Appellant's behalf at trial.

Appellant's Brief at 4.

We review the denial of a PCRA Petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014). This Court grants great deference to the findings of the PCRA court if they are supported by the record. *Commonwealth v. Boyd*, 923 A.2d 513, 515 (Pa. Super. 2007). We give no such deference, however, to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012).

To be eligible for relief pursuant to the PCRA, Appellant must establish, *inter alia*, that his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S. § 9543(a)(2). Appellant must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). An allegation of error "is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal[,] or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b).

Each of Appellant's issues in this appeal avers that he received ineffective assistance of trial counsel. The law presumes counsel has rendered effective assistance. *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). The burden of demonstrating ineffectiveness rests on Appellant. *Id*. To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim. *Commonwealth v. Jones*, 811 A.2d 994, 1002 (Pa. 2002).

First, Appellant must meet the "arguable merit" prong. "The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" *Commonwealth v. Pierce*, 645 A.2d 189, 194 (Pa. 1994) (quotation and citation omitted). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa. Super. 2004) (quotation and citation omitted).

Second, Appellant must meet the "no reasonable basis" prong. We apply the "reasonable basis" test to determine whether counsel's chosen course was designed to effectuate his client's interests. *Pierce*, *supra* at 194-95. "If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective." *Id*. (quotation and citation omitted).

Third, Appellant must meet the "prejudice" prong. "Prejudice is established when a defendant demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings." *Commonwealth v. Chambers*, 807 A.2d 872, 883 (Pa. 2002) (quotation marks and citation omitted). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id*. "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. (quotation marks and citation omitted).

In his first issue on appeal, Appellant contends that trial counsel was ineffective for failing to challenge the competency of Ch.J., who was eleven years old when she testified at Appellant's trial. Appellant's Brief at 9-13. Relatedly, Appellant also claims that counsel was ineffective for failing to object when the Commonwealth asked questions in front of the jury that established the Ch.J.'s competency. *Id.* at 11-13.[4] Appellant claims this

_____

[4] The following excerpt is the entirety of the purported competency colloquy:

[**Commonwealth**:] [D]o you know you just took an oath; right?

[**Ch.J.**:] Uh-huh.

[**Commonwealth**:] Do you know that means you have to tell the truth?

[**Ch.J.**:] Uh-huh.

[**Commonwealth**:] Do you know the difference between telling the truth and telling a lie?

[**Ch.J.**:] (Nodded head in the affirmative).

[**Commonwealth**:] All right. If I said that wall was red, would that be a truth or a lie?

[**Ch.J.**:] A lie.

*(Footnote Continued Next Page)*

questioning violated the dictates of **Commonwealth v. Washington**, 722 A.2d 643 (Pa. 1998).[5]

The competency to testify is presumed where the witness is more than fourteen years of age. **See Rosche v. McCoy**, 156 A.2d 307, 310 (Pa. 1959). **See also** Pa.R.E. 601(a); Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 601.10[2] (2017 ed. LexisNexis Matthew Bender). However, the presumption does not arise where a child witness is under age fourteen. **Rosche**, **supra** at 310. "Under 14 there must be judicial inquiry as to mental capacity, which must be more searching in proportion to chronological immaturity." **Id.** However, this Court has previously held that any error in the failure to conduct a separate formal competency hearing constitutes harmless error in light of a minor victim's testimony at trial where the trial court had the opportunity to observe the minor's demeanor. **See Commonwealth v. Harvey**, 812 A.2d 1190, 1199

_(Footnote Continued)_ ————————

> [**Commonwealth**:] Okay. And if I said you're wearing a pink flowered shirt there, would that be a truth or a lie?
>
> [**Ch.J.**:] The truth.
>
> [**Commonwealth**:] Okay. So you know the difference?
>
> [**Ch.J.**:] (Nodded head in the affirmative).

N.T. Trial, 7/26/12, at 104-05.

[5] In **Washington**, our Supreme Court established a _per se_ rule requiring that child witness competency hearings be conducted outside the presence of the jury.

(Pa. 2002), *abrogated on other grounds*, **Commonwealth v. Elliott**, 80 A.3d 415 (Pa. 2013).

In his direct appeal, Appellant presented several challenges to the victim's competency. This Court first deemed Appellant's competency challenges waived because he failed to challenge the victim's competency or to object to the victim's testimony at trial in any way. **Commonwealth v. Smith**, No. 410 WDA 2013, unpublished memorandum at 5 (Pa. Super. filed Sept. 12, 2014). Significantly, this Court also observed that "[a]bsent waiver, and in consideration of the discretion afforded the trial court, we note that the Commonwealth elicited sufficient testimony from [the victim] Ch.J. to establish her competency." **Id**. at 5 n.3 (citations omitted).

Appellant's claim has arguable merit under the clear guidance provided in Pa.R.E. 601(a) and our case law pertaining to child witnesses under fourteen years of age. Appellant's counsel also failed to articulate a reasonable basis for his failure to challenge Ch.J.'s competency by requesting a proper colloquy outside the presence of the jury. Nevertheless, Appellant is not entitled to relief because he cannot demonstrate prejudice under the circumstances.

Appellant has failed to carry his burden to prove that there is a reasonable probability that the result of the trial would have been different without counsel's error. We note that nowhere in his Brief does Appellant even allege that Ch.J. is or was incompetent. **See** Appellant's Brief at 9-13.

Moreover, Appellant has not directed this Court to any evidence submitted in support of his PCRA Petition regarding Ch.J.s incompetence.

Further, Appellant cannot demonstrate that there is a reasonable probability that the trial court would have sustained his objection to Ch.J.'s competency. Appellant fails to develop and explain what questions he would have asked about Ch.J.'s competency had the trial court conducted a separate competency hearing outside the presence of the jury. Appellant has failed to show a reasonable probability that the competency hearing would have resulted in a finding of Ch.J.'s incompetence resulting in the preclusion of her testimony, let alone that the outcome of his trial would have been different.

Turning to Appellant's related claim regarding counsel's failure to object to the Commonwealth's asking competency questions in front of the jury, we note that the trial court never issued an express or formal ruling in front of the jury that Ch.J. was competent to testify. Ch.J.'s answers to the Commonwealth's questions about the distinction between truth and a lie flowed seamlessly into her testimony regarding Appellant's crimes. As such, no impermissible bolstering occurred in this case in violation of **_Washington_**. **_See Commonwealth v. Hutchinson_**, 25 A.3d 277, 294-95 (Pa. 2011) (finding harmless error in conducting colloquy before the jury where the trial court did not vouch for or endorse child's testimony).

In addition, the trial court expressly instructed the jury that the jury was the sole fact-finder and sole judge of credibility. N.T. Trial, 7/30/12, at 161-67. The jury is presumed to follow the trial court's instructions. ***Hutchinson***, ***supra*** at 296. Appellant has provided not the slightest evidence that the jury did not do so in this case.

Appellant's first ineffectiveness claim, thus, fails.

In his second issue on appeal, Appellant claims that his trial counsel was ineffective for failing to file a "taint" Motion alleging the victim's memory had been tainted as a result of her interview with the Pennsylvania State Police. Appellant's Brief at 13-18. Appellant avers "that Ch.J. did not initially state that the Appellant did anything inappropriate to her and it is only after the [Pennsylvania State Police] Trooper turns the questioning over to Ca.J. that Ch.J. remembers improper things occurring[.]" ***Id.*** at 16. Appellant claims the questioning was, therefore, suggestive. ***Id.*** at 17.

Generally, a court evaluates an allegation of taint at a competency hearing. ***Commonwealth v. Delbridge***, 855 A.2d 27, 40 (Pa. 2003). The proponent of the claim first bears the burden of establishing "some evidence" of taint. ***Id***. Once the party meets that threshold requirement, he then must meet the ultimate burden of demonstrating taint by clear and convincing evidence. ***Id***. The critical inquiry in deciding the issue of taint at a competency hearing is whether the memory of the child has been corrupted. ***Id***.

In analyzing whether a party has met the "some evidence of taint" standard, the trial court considers the totality of the circumstances around the child's allegations. *Id* at 41. This Court has identified some of the common considerations relevant to this analysis as follows:

> (1) the age of the child; (2) the existence of a motive hostile to the defendant on the part of the child's primary custodian; (3) the possibility that the child's primary custodian is unusually likely to read abuse into normal interaction; (4) whether the child was subjected to repeated interviews by various adults in positions of authority; (5) whether an interested adult was present during the course of any interviews; and (6) the existence of independent evidence regarding the interview techniques employed.

*Commonwealth v. Judd*, 897 A.2d 1224, 1229 (Pa. Super. 2006) (citation omitted).

In addressing Appellant's ineffectiveness claim, the PCRA court observed:

> Here, [Attorney] Crawford testified that he was aware of the holding in [*Commonwealth v. Delbridge*, 855 A.2d 27 (Pa. 2003),] and of the possibility of filing a "taint" motion to exclude Ch.J.'s testimony. Crawford also acknowledged that he was aware that the Trooper interviewed Ch.J. in the presence of the other victim and their grandmother. Crawford testified that he did not pursue a "taint" motion because he did not believe such a challenge was warranted. After a careful review of the record, we find Crawford had a reasonable basis for such a conclusion.
>
> In support of his argument, [Appellant] admitted the transcript of the Trooper's interview with Ch.J. At the beginning of the interview, Ch.J. tells the Trooper that [Appellant] attempted to kiss her and have her watch videos with "girls and boys." All of this information was elicited by open-ended questions given only by the Trooper.[6] In fact, it is only *after* Ch.J. tells the Trooper the above information that her family and the Trooper attempt more leading questioning. **However, despite the more**

- 13 -

**suggestive methods attempted by Ca.J. and her grandmother, Ch.J. repeatedly denies their suggestions and refuses to implicate [Appellant] in any further conduct than she already had in response to the non-leading questions.** Therefore, while we are inclined to agree with [Appellant] that the questioning methods shift to being suggestive in nature later in the interview, Ch.J.'s responses nonetheless remain consistent and—in fact—resilient against suggestions even by her own family members. Moreover, Ch.J.'s testimony at trial was limited strictly to the information she gave in response to the Trooper's open-ended questions at the beginning of the interview, which we find would not trigger additional scrutiny under **Delbridge**. We therefore find that Crawford had a reasonable basis for declining to pursue a "taint" motion and accordingly deny [Appellant's] requested relief on this argument.

> [6] We find it important to note that the information given in response to non-leading questions comprised essentially the entirety of Ch.J.'s testimony at trial.

PCRA Court Opinion, 8/31/16, at 8 (citations omitted; emphasis added).

As noted above, in order for a taint hearing to be warranted, the burden would have been on Appellant to come forward with evidence of taint. **Judd**, **supra**. There appears to be no dispute in this case that the Trooper interviewed the minor victim while her grandmother and sister were in the room. However, the presence of an interested adult during questioning is only one factor for a court to consider as "some evidence of taint." **Delbridge, supra** at 41; **Judd, supra** at 1229. Our cases unequivocally require a court to review a taint motion utilizing a totality of the circumstances test. **See id.**

Appellant does not point to any other concerning factors supporting his argument regarding Ch.J.'s purportedly "corrupted" memory. Appellant fails

- 14 -

to point to any evidence of hostile motive on the part of Ch.J., her grandmother, or her sister. Appellant also fails to show repeated interviews, or other independent evidence of coercive or suggestive interview techniques that have corrupted Ch.J.'s memory.

Based on the totality of the circumstances presented in this case, we conclude Appellant would not have met his burden to warrant a taint hearing. It is axiomatic that counsel cannot be ineffective for failing to raise a meritless issue. **Fears**, **supra** at 804. Thus, Appellant fails to satisfy the first prong of the ineffectiveness test, and he is not entitled to relief on this issue.

In his third claim, Appellant avers that his trial counsel was ineffective for calling Walsh as an expert witness at trial and failing to vet Walsh. Appellant's Brief at 19. Appellant also claims that counsel was ineffective for failing to call a different expert witness without "credibility and truthfulness" issues. **Id.** at 20-21. We address each issue in turn.

We initially note that the certified record does not support Appellant's averment that counsel failed to vet the expert. Appellant's Brief at 20. Counsel testified at the PCRA hearing that he obtained and reviewed the expert's resume and spoke to the expert numerous times, even though Appellant had personally hired and paid the expert for his services before counsel entered his appearance and without counsel's advice or assistance. **See** N.T. PCRA, 5/20/16, at 23-24.

The PCRA court addressed Appellant's claims as follows:

[Appellant] next argues that Crawford was ineffective in not adequately "vetting" [Appellant's] expert witness, Dennis Walsh. While we may agree that Crawford could have handled Walsh's deficiencies in a more discrete manner, we nonetheless find that Crawford had a reasonable basis for using Walsh given the facts of the case and find that [Appellant] has failed to prove that he was prejudiced by Crawford's decision.

Primarily, we highlight that Crawford's overall assessment of [Appellant's] case was—and is—directly on point. In Crawford's view, success at trial depended almost entirely upon the admissibility of [Appellant's] incriminating recorded statements in his consensual call with one of the victims.[11] Crawford testified that, once he knew the recorded statement was coming in at trial, he needed to address the recording in some way. And, despite Walsh's deficiencies, Crawford did not seek another expert nor request a trial continuance because a prior search for another expert was fruitless and because he did not believe [Appellant] could afford a second expert. We therefore find that, given the circumstances Crawford found himself in at trial, he had a reasonable basis for calling Walsh as an expert witness and that his decision was made in furtherance of [Appellant's] interests. Crawford was presented with the binary decision of: 1) calling no expert to rebut the key piece of evidence that was "fatally damaging to his case," or 2) challenging said evidence with an expert, however problematic his credibility may be. While neither option is optimal, at the very least Crawford's decision provided [Appellant] with a defense.

[11] We note that [Appellant] seemingly agrees with Crawford's assessment, as [Appellant] calls the recording "fatally damaging to his case." The question that naturally arises, then, is what would [Appellant] now have done differently if placed in Crawford's position again? If the answer is to call a credible alternative expert witness, we have no evidence that one exists. As we discuss, *infra*, [Appellant] has made no showing that another expert that shares Walsh's opinion is available. Therefore, if Crawford's choice at trial was limited to no expert or damaged expert, we fail to see how [Appellant] was prejudiced by the choice that provided *some* defense, no matter how hampered it may have been. Nor do we see

how Crawford's decision had no reasonable basis in furthering his client's interests at trial.

PCRA Court Opinion, 8/31/16, at 11-12 (citations omitted; emphasis in original).

We agree with the PCRA court's analysis. Appellant hired Walsh before counsel's involvement. *See* N.T. PCRA, 5/20/16, at 23-24. Given counsel's alternative choice of not contesting the recording, a key piece of evidence, we conclude that counsel had a reasonable basis designed to effectuate Appellant's interests in deciding to call Walsh at trial.[6]

With respect to Appellant's claim that counsel should have called a different expert witness, it is well settled that the "failure to call [an expert] witness is not *per se* ineffective assistance of counsel as such decision generally involves a matter of trial strategy." *Commonwealth v. Lauro*, 819 A.2d 100, 105 (Pa. Super. 2003) (citation omitted). A claim that counsel was ineffective for failing to call a potential expert witness to testify at trial requires a petitioner to "establish that the witness existed and was available, that counsel was informed of the witness' existence, that the witness was ready and willing to testify[,] and that the absence of the

_____

[6] Moreover, Appellant concedes that he "was unable to find any case directly on point[.]" Appellant's Brief at 22. His reference to *Commonwealth v. Penrose*, 669 A.2d 996 (Pa. Super. 1995), for its instructiveness provides no support. *See id.* (concluding that counsel was not ineffective when refusing to emphasize a diminished capacity defense during closing arguments when weak and diluted expert testimony supported that defense).

witness prejudiced the defendant to a point where the defendant was denied a fair trial." *Commonwealth v. Moser*, 921 A.2d 526, 531 (Pa. Super. 2007) (citation omitted).

The PCRA court addressed Appellant's claim as follows:

Moreover, [Appellant] has failed to make any showing that an expert witness alternative to Walsh even exists. Noticeably lacking in [Appellant's] petition is any averment that he has located an expert who shares Walsh's opinion but lacks Walsh's baggage. Indeed, such a[n] expert may not exist, which lends credence to Crawford's testimony that his search for an alternative expert was fruitless.[12] Therefore, we also find that [Appellant] has failed to prove prejudice where there is no showing that a more palatable expert witness who shares Walsh's opinion even exists.

> [12] We also note that[] the possibility that no other expert exists may be indicative of the strength of Walsh's opinion and his problems as a witness. That is, Walsh may be the only "expert" in existence that would be willing to give his opinion due, at least in part, to his problems as a witness.

PCRA Court Opinion, 8/31/16, at 12-13 (citations omitted; emphasis in original).

Our review supports the PCRA court's analysis. The PCRA court correctly noted that Appellant failed to demonstrate that an alternative expert exists, or that that unknown expert was available and willing to testify at trial. As a result, Appellant has failed to show that counsel's conduct lacked a reasonable basis designed to effectuate his interests and his final ineffectiveness claim fails.

The record supports the PCRA court's findings and its Order is otherwise free of legal error. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/2017