J-S56024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HENRY ATTICA | : | |
| | : | |
| Appellant | : | No. 341 EDA 2020 |

Appeal from the PCRA Order Entered December 16, 2019,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0009745-2012.

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                        Filed: April 30, 2021

Henry Attica appeals from the order denying his timely petition for post-conviction relief filed under the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A. §§ 9541-46. We affirm.

In deciding Attica's direct appeal, we summarized the pertinent facts and trial testimony as follows:

> On April 27, 2012, Walter West (herein "Complainant") and his girlfriend, Lori Pugh, went to Old Philly Bar for a few drinks. After roughly fifteen minutes, Lori's son, James Attica (herein "James"), came to the bar and got into an argument with her over marijuana. James then got into an argument with the Complainant over money that the Complainant had owed him. The argument carried over to the street where James put his hands on Lori to push her and the Complainant later stepped between them. Lori

---

[*] Retired Senior Judge assigned to the Superior Court.

testified that following the altercation, James walked the opposite way and that she and the Complainant went home.

After returning to his home, located at 137 West Susquehanna Avenue, the Complainant testified that Lori received a threatening voicemail from James who stated that he was going to burn and break the windows of the Complainant's car. At approximately 10:00 p.m. that night, the Complainant stated that he saw [Attica] and James, [Attica's] nephew, drive by his house two or three times in a red Ford F150. The Complainant stated that he went to the bathroom and upon returning saw a red truck pass his house and observed his car ablaze. Once the fire department came and put out the fire, the Complainant saw [Attica] and James pass by again, laughing as if it was a joke. The Complainant's car was completely destroyed and subsequently towed away to AC Auto.

[James] next recounted his version of the incident during his [in-court] testimony. He testified that following the argument, he went to another bar to borrow a pedal bike so he [could] break the Complainant's car windows. When James arrived at the bar, he told [Attica] about the argument between him and the Complainant. James testified that [Attica] told him "… [he] isn't going to get away with this shit." James and Attica then left in [Attica's] red Ford F150 truck and went to the gas station to fill up a container with gasoline. James testified that [Attica] dropped him off at his house because he did not want to go to the Complainant's house. Later that evening, [Attica] drove James by the Complainant's home and James saw the Complainant's burnt vehicle. He stated that he was not in the truck with [Attica] when the car was burned. James pleaded guilty to the crimes of conspiracy and criminal mischief on March 26, 2015.

The Commonwealth called Lieutenant Robert Crowe, an expert witness, to testify. Lieutenant Crowe is an assistant fire marshal with 20 years of experience as a firefighter and has conducted over thousands of investigations. He determined that something was poured on the windshield and came down onto the exterior panel of the Complainant's vehicle and then onto the ground. He testified that thermal patterns on the vehicle were indicative of some sort of an accelerant being applied to the front of the vehicle and

ignited, and that this was something that could not have happened accidently on a car by itself. [Lieutenant Crowe explained that an accelerant is gasoline, kerosene, lighter fluid, or some other type of igniting liquid.] Further, he expressed that such a fire can extend to nearby trees, vehicles, or buildings. Likewise, Lieutenant Andry Metallus testified that he was concerned that the fire could extend to nearby structures, trees and cars. He further testified that the burn marks reflect that the fire was incendiary in nature and not mechanical.

*Commonwealth v. Attica*, 179 A.3d. 559 (Pa. Super. 2017), unpublished memorandum at 2-3 (paragraph break added; citation omitted).

On August 20, 2015, a jury convicted Attica of conspiracy, arson-danger of death or bodily injury, and risking a catastrophe. On October 30, 2015, the trial court sentenced Attica to an aggregate term of 23½ to 47 years of imprisonment. Following the denial of his post-sentence motion, Attica filed an appeal to this Court. On October 13, 2017, we affirmed Attica's judgment of sentence. *Attica*, *supra*. On March 7, 2018, our Supreme Court denied Attica's petition for allowance of appeal. *Commonwealth v. Attica*, 182 A.3d 440 (Pa. 2018).

On May 31, 2018, Attica filed a *pro se* PCRA petition. The PCRA court appointed counsel. On July 23, 2018, PCRA counsel filed an amended petition on Attica's behalf in which he raised multiple claims, including an assertion that trial counsel was ineffective for failing to "call an expert witness to testify that the Commonwealth did not follow appropriate procedures during the arson investigation." Amended PCRA Petition, 7/23/18, Memorandum of Law, at 2 (unnumbered).

- 3 -

Thereafter, PCRA counsel filed a supplemental PCRA on January 22, 2019, to which he attached "an expert report authored by Jeffrey T. Morrill, a "State of Georgia Certified Arson Investigator.'" Amended Petition, 1/22/19, Exhibit A.

The Commonwealth filed a response to each amendment of the PCRA petition. On November 7, 2019, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Attica's petition without a hearing. Attica filed a timely response. By order entered December 16, 2019, the PCRA court dismissed Attica's PCRA petition. This timely appeal followed. Both Attica and the PCRA court have complied with Pa.R.A.P. 1925.

Attica now raises the following six issues:

1. Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence was presented that trial counsel was ineffective for failing to present expert witness testimony as requested by [Attica].

2. Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence was presented that trial counsel was ineffective for failing to seek suppression of physical evidence.

3. Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence was presented that trial counsel was ineffective for refusing to present an available alibi defense.

4. Whether the PCRA court erred in dismissing the PCRA petition when clear and convincing evidence was presented that [Attica's] constitutional rights were violated by prosecutorial misconduct, based on the prosecutor's inflammatory remarks made to the jury during opening and closing statements, as well as

evidence that did not prove his guilt beyond a reasonable doubt.

5. Whether the PCRA court erred by dismissing the PCRA petition when newly discovered evidence was presented that firmly established an alibi defense and would have exonerated [Attica] had it been available for introduction at trial.

6. Whether the PCRA court erred by failing to grant an evidentiary hearing.

Attica's Brief at 8.[1]

Our scope and standard of review is well-settled:

In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

*Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 779 (Pa. Super. 2015)

(*en banc*) (internal citations and quotations omitted).

Moreover,

The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which,

---

[1] We have reordered Attica's issues to correspond with the order he discussed them in the argument section of his brief.

if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. Blakeney***, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

Attica's first three issues challenge the effectiveness of trial counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." ***Id.*** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. ***Id.*** at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id.*** A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. ***Commonwealth v. Martin***, 5 A.3d 177, 183 (Pa. 2010).

Attica first claims that trial counsel was ineffective for failing to call an expert witness who would have testified that the Commonwealth failed "to

follow established investigative and custodial procedures" when conducting its

fire investigation. Attica's Brief at 13.[2] Our Supreme Court has explained:

> To satisfy the "arguable merit" prong for a claim of ineffectiveness based upon trial counsel's failure to call an expert witness, the petitioner must prove that an expert witness was willing and able to testify on the subject of the testimony at trial, counsel knew or should have known about the witness and the defendant was prejudiced by the absence of the testimony. Prejudice in this respect requires the petitioner to show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. Therefore, the petitioner's burden is to show that the testimony provided by the uncalled witness would have been helpful to the defense.

***Commonwealth v. Williams***, 141 A.3d 440, 460 (Pa. 2016) (citations and

footnote omitted). Moreover, the failure to call an expert witness is not *per*

*se* ineffective assistance of counsel, as such decisions usually involve matters

of trial strategy. ***Commonwealth v. Smith***, 167 A.3d 782, 793 (Pa. Super.

2017).

---

[2] In its opinion, the trial court claims we should find all of Attica's ineffectiveness claims waived for lack of specificity. **See** PCRA Court Opinion, 6/15/20, at 6-7. Along with his notice of appeal, Attica contemporaneously filed a Rule 1925(b) statement. Therefore, the PCRA court did not request a new one, and prepared its Rule 1925(a) opinion. Although Attica later filed an amended Rule 1925(b) statement, the PCRA court found it untimely. Nonetheless, the PCRA court explained why each ineffectiveness claim raised by Attica did not entitle him to relief. Given these circumstances, we decline to find waiver. **See generally**, **Commonwealth v. Parrish**, 224 A.3d 682 (Pa. 2020).

Here, the PCRA court found Attica's claim meritless for a number of reasons. The court first explained:

> Here, [Attica's] petition included an expert report authored by Jeffrey T. Morrill ("Mr. Morill"), a "State of Georgia Certified Arson Investigator." Presumably, trial counsel was aware that an expert witness could have testified on the subjects raised throughout [Attica's] PCRA petition. However, neither the petition nor Mr. Morrill's report indicates that Mr. Morrill would have been available and willing to testify at trial, had his services been retained. Thus, [Attica] failed to prove the first required element of the "arguable merit" prong, and discussion of his claim could end here.

PCRA Court Opinion, 6/15/20 at 11 (citation omitted).

Our review of the record supports the trial court's conclusion. ***See*** In his brief, Attica does not dispute this finding. Thus, Attica's first ineffectiveness claim fails on this basis alone.

However, the PCRA court further determined that, even if Mr. Morrill was available to testify, Attica's claim would still have been without merit given its review of Mr. Morill's report.

As noted above, Attica asserts that Mr. Morill's testimony would have established that the Commonwealth failed to follow established investigative and custodial procedures regarding its arson investigation. ***See infra***. Noting this claim, the PCRA court explained in detail:

> [F]or some indiscernible reason, the proposed expert report simply does not address the "procedures," "methodology," or "protocol" of arson investigation—let alone any alleged deficiency of Lieutenant Crowe's methodology. Some of the opinions expressed in Mr. Morrill's report conflict with Lieutenant Crowe's testimony,

but the methodology of fire investigation is not discussed anywhere in Mr. Morrill's report. The only commentary (relating to Lieutenant Crowe's methodology) contained in the report is the single conclusory statement, "[Lieutenant Crowe] has not properly used the scientific method." Neither [Attica] (in his four petitions) nor Mr. Morrill (in his seven-page report) identify, define, or explain which "procedures," "methodology," or "protocol" Lieutenant Crowe failed to follow. Neither [Attica] nor Mr. Morrill identify or explain the "established protocol" or how that "established" method compares to the one employed by Lieutenant Crowe. [Attica] bases his entire theory of ineffectiveness on the notion that Lieutenant Crowe failed to follow established professional protocols, but inexplicably fails to provide *any* evidence to support this accusation. Without evidentiary support, [Attica's] underlying claim has no conceivable merit.

Even if the proposed expert report would have aided [Attica's] defense in some other way, [Attica] utterly failed to frame the issue for this court's review. This court acknowledges that Lieutenant Crowe's testimony and Mr. Morrill's report represent conflicting theories, but these discrepancies in opinion are not compelling enough to entitle [Attica] to relief. Lieutenant Crow determined that a liquid accelerant (e.g., gasoline, kerosene, of lighter fluid) was applied to the passenger's side of the windshield and used to ignite the fire. Conversely, Mr. Morrill, while not denying that liquid accelerant was applied to any other portion of the vehicle, repeatedly opines that no ignitable liquid was applied to the windshield. Lieutenant Crowe testified that the fire originated on the windshield, traveled down into the window well and the engine compartment, and extended outwards to the passenger-side wheel well, damaging the windshield and the engine compartment. Conversely, Mr. Morrill argues that the fire originated within the engine compartment, before venting "upward and outward" and damaging the engine compartment, windshield wiper boot, and windshield.

If the members of the jury heard and believed Mr. Morrill's interpretation of the fire, they may have concluded that [the Complainant] did not recall the incident correctly or that portions of his testimony were not credible. However, any potential benefit from Mr. Morrill's proffered testimony would

have been nominal. Despite [Attica's] claim that Lieutenant Crowe "did not properly identify the cause of the fire," neither [Attica] or Mr. Morrill deny that the fire was caused by arson. Essentially, the proposed report would have allowed the jury to consider whether the alleged arsonist ignited a fire that traveled "upward and outward," as opined by Mr. Morrill, or downward and outward, as opined by Lieutenant Crowe. It is highly unlikely that these dueling theories would have affected the jury's key consideration—whether [Attica] was the alleged arsonist who set fire to [the Complainant's] vehicle. Thus, [Attica's] underlying claim has no merit, and this court properly dismissed his petition on this basis.

PCRA Court Opinion, 6/15/20, at 13-15 (footnotes and citations omitted).

Given all of its comments, the PCRA court thoroughly examined the merits of Attica's first ineffectiveness claim and found none. The PCRA court's conclusion is supported by our review of the record.

Moreover, our review of the record also supports the PCRA court's conclusion that Attica failed to establish that counsel had no reasonable basis for failing to call an expert witness. "Trial counsel need not introduce expert testimony on his client's behalf if he is able to effectively cross-examine prosecution witnesses and elicit helpful testimony." **Williams**, 141 A.3d at 464 (citation omitted). Here, the PCRA court concluded that the failure to retain a defense expert "did not constitute ineffective assistance, as [trial] counsel conducted skilled, useful cross-examination" of Lieutenant Crowe that aided Attica's defense. PCRA Court Opinion, 6/15/20, at 16. Our review of the record support this conclusion.

Finally, the PCRA court found that Attica could not establish that the failure to call an expert prejudiced him. The court explained:

- 10 -

In the case at bar, the proposed expert testimony does not overcome the extensive direct evidence of [Attica's] guilt. James testified that on April 27, 2015, [Attica] repeatedly told James that he was going to burn [the Complainant's] car. The pair then drove to a gas station and filled a jug with gasoline. Later that same evening, [the Complainant] saw [Attica] drive his red truck past [the Complainant's] home two or three times, as James was seated in [Attica's] passenger seat. [The Complainant] saw the same red truck drive by again immediately before his car was ignited, although he admitted that he could not see into the truck that particular time.

[Lori Pugh's] testimony also corroborated [Attica's] presence at the scene. She testified that she was at her house with [the Complainant] when she saw a red Ford 150 truck, which she knew was [Attica's], drive by and that "when we looked back out the door, the car was on fire." Once the fire was extinguished [the Complainant] saw [Attica] and James drive by *again*, "laughing like it was a joke."

Officer Marion Cienkowski testified that on May 5, 201[5], [the Complainant] "came into the 25th District window and stated that two males, who he only knew by the names of Jimmy and [Attica] threw some sort of liquid on his vehicle and set the vehicle on fire." Lieutenant Crowe determined that an arsonist used "some type of accelerant" to deliberately ignite the fire.

The testimony of [the Complainant], Officer Cienkowski, Lori [Pugh], and Lieutenant Crowe corroborate James' testimony that [Attica] intentionally set fire to [the Complainant's] car. For the reasons discussed **supra**, even if the jury was presented with and believed the information contained in Mr. Morrill's report, it is highly unlikely the proposed testimony would have overcome the substantial evidence of [Attica's] guilt and changed the outcome of trial. Thus, [Attica] cannot show that he suffered prejudice, and his ineffectiveness claim fails.

PCRA Court Opinion, 6/15/20, at 18-10 (emphasis in original; paragraph breaks added; citations omitted).

We agree that Attica's first issue does not warrant post-conviction relief. Given the overwhelming evidence that Attica set the Complainant's vehicle ablaze, the fact that a defense expert could have challenged the "methodology" of the arson investigation is without significance.

In his second issue, Attica claims that trial counsel was ineffective for failing to file a motion to suppress the physical evidence. According to Attica, he "had a legitimate factual and legal basis to seek suppression of [the Complainant's vehicle] based upon spoliation of the evidence caused by the Commonwealth's failure to maintain an uninterrupted chain of custody." Attica's Brief at 14.

"The failure to file a suppression motion under some circumstances may be evidence of ineffectiveness assistance of counsel." *Commonwealth v. Watley*, 153 A.3d 1034, 1044 (Pa. Super. 2016). "However, if the grounds underpinning that motion are without merit, counsel will not be deemed ineffective for failing to so move." *Id.* "The defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability that the verdict would have been more favorable." *Id.*

The PCRA court found Attica's second issue to lack arguable merit. After citing Attica's assertions in his PCRA petition, the PCRA court explained:

> It is unclear from his poorly documented claim exactly which evidence was "spoiled" or how the Commonwealth's handling of the vehicle caused "spoliation" of that evidence. Further, even assuming there were custodial defects, gaps in the chain of custody—the underlying basis for [Attica's]

- 12 -

argument—goes to the weight of the evidence and not its admissibility. ***Commonwealth v. Feliciano***, 67 A.3d 19, 29 (Pa. Super. 2013). Thus, the physical evidence of [the Complainant's] burned vehicle was not inadmissible on the ground that "the Commonwealth [failed] to maintain an uninterrupted chain of custody," and trial counsel cannot be found ineffective for failing to file a frivolous motion on this basis. ***See Commonwealth v. Pearson***, 685 A.2d 551, 556 (Pa. Super. 1996) ("[C]ounsel can never be found to have been ineffective for failing to raise a meritless claim."). Even if trial counsel had filed the proposed motion, this court would have undoubtedly denied it. Thus, [Attica] cannot show that he was prejudiced by trial counsel's failure to file the proposed motion, and his ineffectiveness claim fails.

PCRA Court Opinion, 6/15/20, at 19-20.

Our review of the record and pertinent case law supports the PCRA court's conclusion. As noted by the PCRA court, Attica does not articulate any specific spoliation that occurred. Attica's claim that, because of gaps in the chain of custody, "the vehicle was exposed to any and all kinds of tampering and manipulation," amounts to no more than speculation. Attica's Brief at 14. Concerns about chains of custody implicate the weight to be accorded the evidence not its admissibility. ***See***, ***e.g.***, ***Commonwealth v. Soto***, 202 A.3d 80, 102 (Pa. Super. 2018) (explaining physical evidence may be admissible despite gaps regarding it chain of custody) (citation omitted). Finally, we note that trial counsel vigorously cross-examined the Commonwealth witness regarding the handling of the vehicle. ***See*** N.T., 8/19/15, at 176-80. Thus, Attica's second issue warrant no relief.

In his third issue, Attica claims that trial counsel was ineffective for failing to conduct a pretrial investigation as to potential alibi witnesses.

According to Attica, he "provided trial counsel with the name and address of every location he visited throughout the night of the incident," and "[d]espite [his] repeated request for counsel to investigate potential alibi witnesses," trial counsel failed "to perform even a cursory investigation[.]" Attica's Brief at 15. Attica's third issue warrants no relief.

To establish that trial counsel was ineffective for failing to investigate and/or call a witness at trial, a PCRA petitioner must demonstrate that:

> (1) the witness existed; (2) the witness was available; (3) trial counsel was informed of the existence of the witness or should have known of the witness's existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant.

*Commonwealth v. Hall*, 867 A.2d 619, 629 (Pa. Super. 2005) (citation omitted).

Here, Attica has not met any of the *Hall* factors. In addition, because Attica has not attached a certification from trial counsel to his PCRA petition, his allegation that counsel did not even conduct a cursory investigation is no more than speculation. *See Commonwealth v. Roney*, 79 A.3d 595, 607 (Pa. 2013) (rejecting as speculative claim regarding reasonable basis when the petitioner did not proffer affidavits from trial counsel concerning counsel's actual investigation or explain why such an affidavit could not be procured). Finally, Attica fails to assert how he specifically was prejudiced regarding this ineffectiveness claim. Rather, Attica argues "[t]he cumulative effect of [trial] counsel's multiple errors created a situation where the jury was presented

with evidence from a scientifically flawed arson investigation on a potentially tainted vehicle that was corroborated without challenge by a biased eyewitness [(James)] with an ulterior motive against [him]." Attica's Brief at 15. Given that we have already determined that Attica's claims regarding the arson investigation and spoliation of evidence warrant no relief, Attica's failure to identify any alibi witness that trial counsel should have known of likewise fails.

In his fourth issue, Attica asserts that the trial court erred in denying his claim of after-discovered evidence in the form of two alibi witnesses that came forward following his trial. To address this claim, we first note the test applied to after-discovered evidence under the PCRA. When discussing the test in the context of a PCRA appeal, our Supreme Court recently summarized:

> [W]e have viewed this analysis in criminal cases as comprising four distinct requirements, each of which, if unproven by the petitioner, is fatal to the request for a new trial. As stated, the four-part test requires the petitioner to demonstrate the new evidence: (1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. The test applies with full force to claims arising under Section 9543(a)(2)(vi) of the PCRA. In addition, we have held the proposed new evidence must be producible and admissible.

***Commonwealth v. Small***, 189 A.3d 961, 972 (Pa. 2018) (citations omitted).

Moreover, the test for after-discovered evidence "is conjunctive; the appellant must show by a preponderance of the evidence that each of these

factors has been met in order for a new trial to be warranted." ***Commonwealth v. Foreman***, 55 A.3d 532, 537 (Pa. Super. 2012) (citation omitted).

Finally, credibility determinations are an integral part of determining whether a PCRA petitioner has presented after-discovered evidence that would entitle him to a new trial. ***See***, ***e.g.***, ***Small***, 189 A.3d at 978-79 (remanding for the PCRA court to make relevant credibility determinations). We have stated, prior to granting a new trial based on after-discovered evidence, "a court must assess whether the alleged after-discovered evidence is of such a nature and character that it would likely compel a different verdict if a new trial is granted." ***Commonwealth v. Padillas***, 997 A.2d 356, 365 (Pa. Super. 2010). "In making this determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." ***Id.***

In support of his fourth issue, Attica asserts that "two witnesses have come forward and stated unequivocally that [he] was with them at a bar during the entire time that he is alleged to have committed the crime for which he was convicted." Attica's Brief at 16. Referring to the affidavits of two women which he attached to his PCRA petition, Attica contends that the after-discovered evidence "is not being used to impeach the credibility of any witness, and it establishes his innocence and compels the jury to render a

different verdict." *Id.* Thus, Attica contends that this after-discovered evidence entitles him to a new trial. We disagree.

The PCRA court found that even if Attica could meet the other *Small* factors, he "simply cannot show that the proposed testimony would have likely compelled a different verdict." PCRA Court Opinion, 6/15/20, at 23. The court explained:

> Here, Walter testified that he saw [Attica] repeatedly drive by his home around 10:00 p.m., before seeing his car set ablaze. Lori testified that "between the hours of 8:00 and 10:00 p.m.," she also saw [Attica's] truck drive by the home, shortly before seeing Walter's car engulfed in flames. [Attica's] proposed alibi witnesses claimed to have seen [Attica] "at the Old Philadelphia Bar on April 27, 2012, between the hours of 10pm until approximately 2am."
>
> Even if [their] proposed testimony is true, it does not constitute an alibi, as it in no way precludes the possibility of [Attica's] guilt. The location where the witnesses claim to have seen [Attica], the Old Philly Bar, and Water's home . . . are located within five blocks of each other. [Attica] could have easily set fire to Water's car "around 10:00 p.m." or "between the hours of 8:00 and 10:00 p.m.," before spending the remainder of his evening at Old Philly Bar. The proposed testimony only corroborates [Attica's] presence near the scene of the crime at the relevant point in time and bolster's the Commonwealth's case.

*Id.* at 22 (citations omitted).

Our review of the witnesses' affidavits, along with the trial testimony, supports the PCRA court's conclusion that Attica's after-discovered evidence claim does not entitle him to a new trial. Even if the witnesses would have established an alibi, Attica does not explain how their testimony would do

more than impeach the trial testimony from James, the Complainant, and Lori Pugh. Thus, Attica's fourth issue fails.

In his fifth issue, Attica asserts that the PCRA court erred in dismissing his PCRA petition because his "due process rights were violated at trial based on the [the trial court's] allowance of evidence of a racially offensive statement purportedly made by him." Attica's Brief at 17. According to Attica, '[t]he prosecutor made improper remarks and references about the purported statement in both his opening and closing remarks." *Id.*

Our review of the record supports the PCRA court's conclusion that this claim of prosecutorial misconduct was vague, and, at any rate, previously litigated by Attica in his direct appeal. *See* 42 Pa.C.S.A. § 9544(a); *Attica*, *supra*, unpublished memorandum at 7-10, 13-15. Additionally, we note that Attica's argument in support of this claim consists of one paragraph that is woefully undeveloped. Thus, we need not consider the claim further. *See Commonwealth v. Tielsch*, 934 A.2d 81, 93 (Pa. Super. 2007) (holding that undeveloped claims will not be considered on appeal).[3]

In his sixth and final issue, Attica contends that the PCRA court erred in dismissing his PCRA petition without first holding a hearing. Because we have determined that Attica's preceding five claims were devoid of merit, the PCRA

---

[3] As part of this claim, Attica challenges the sufficiency of the evidence supporting his convictions. This claim was also raised and rejected in Attica's direct appeal.

court did not err or abuse its discretion in dismissing Attica's PCRA petition without first holding a hearing. **Blakeney**, **supra**.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 4/30/21*